IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTHONY TORREZ,

        Plaintiff,

   v.

OREGON DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

No. CV 07-689-MO

OPINION AND ORDER

**MOSMAN, J.**,

On December 11, 2006, plaintiff Anthony Torrez, an inmate at Two Rivers Correctional Institution ("TRCI"), had surgery for a recurrent inguinal hernia after Dr. Greg Lytle diagnosed it approximately five months earlier. Mr. Torrez now claims the defendants' actions (1) violated his Fourteenth Amendment rights, (2) violated his Eighth Amendment rights, (3) violated his First Amendment rights, (4) breached a settlement agreement, (5) breached a covenant of good faith and fair dealing, and (6) constitute intentional infliction of emotional distress ("IIED"). The defendants filed a Motion for Summary Judgment (#25). They argue Mr. Torrez's medical care met community standards and his claims must therefore fail. Mr. Torrez concedes that his Fourteenth Amendment claim fails. His remaining claims also fail, however, because no rational trier of fact could find in his favor. Therefore, I GRANT the defendants' Motion for Summary Judgment.

PAGE 1 OPINION AND ORDER

## BACKGROUND

Dr. Winn Gregory surgically repaired Mr. Torrez's recurrent right inguinal hernia on December 11, 2006.  Six months earlier, on June 26, 2006, Mr. Torrez informed TRCI medical staff that he was experiencing pain near an incision from a September 2005 hernia surgery.

Mr. Torrez had the 2005 surgery after settling a 2003 lawsuit (*Torrez v. Richter et al.*, No. CV 03-770-PA (D. Or. filed June 6, 2003)).  In that lawsuit, he alleged that four individual defendants violated his Eighth and Fourteenth Amendment rights when, for several years, they denied him surgery for a right inguinal hernia.  In the settlement agreement, Mr. Torrez agreed to dismiss the case with prejudice in exchange for "[t]he prompt surgical repair of [his] right inguinal hernia," attorney fees, and costs.  (Am. Concise Statement of Material Facts (#34) Ex. 1, p. 16.)

Approximately eight months later, in May 2006, Mr. Torrez began experiencing pain near the incision from the 2005 surgery.  In June 2006 he informed TRCI medical staff of the pain. (Groshong Decl. (#28) Ex. 2, Attach. 2, Doc. 030.)  On June 29, Dr. Greg Lytle examined Mr. Torrez and noted that the area of his right inguinal hernia was tender to palpation.  He concluded that Mr. Torrez had a groin strain, and recommended rest, "no exercise for now," and use of ibuprofen for pain.  (*Id.* Doc. 031.)

On July 14, a nurse noted that Mr. Torrez had a "golf ball size" lump just above the scar from his 2005 surgery.  The nurse concluded it was possible Mr. Torrez had a reducible hernia—a hernia that he could gently push back into place.  The nurse noted that she would consult with Dr. Lytle.  (*Id.*)

PAGE 2 OPINION AND ORDER

On July 18, Dr. Lytle diagnosed Mr. Torrez with a recurrent right inguinal hernia. (*Id.* Doc. 032.) Before his 2005 surgery, "[Mr. Torrez] underst[ood] that there is about a 5% recurrence rate" for inguinal hernias. (*Id.* Doc. 330.) Mr. Torrez requested surgery for his recurrent hernia, and Dr. Lytle told him they would not schedule surgery. (Snyder Decl. (#44) Ex. 1, p. 3.) Dr. Lytle recommended conservative care. (Groshong Decl. (#28) Ex. 2, Attach. 2, Doc. 032.)

From July 18 to August 30, Mr. Torrez visited TRCI sick call at least four times. The chart notes (*Id.* Docs. 032-33) summarize his visits as follows:

| | |
|---|---|
| July 21, 2006 | Mr. Torrez requested that his hernia case be presented to the Therapeutic Level of Care Committee ("TLC Committee"), and he reported that his hernia was pretty painful at times. An exam was deferred because Dr. Lytle examined Mr. Torrez on July 18. A chart note on July 25 indicates the TLC Committee denied his request for surgery. |
| August 1, 2006 | Mr. Torrez reported that his hernia caused him pain when he coughed or sneezed. He demonstrated the proper technique for holding the area when coughing or sneezing. |
| August 16, 2006 | At 8:10 a.m., Mr. Torrez reported that his hernia was bigger and hurt more. He experienced pain upon palpation, but the hernia reduced easily. |
| August 16, 2006 | At 12:30 p.m., a chart note indicates Mr. Torrez did not complain of nausea, vomiting, or constipation, and his hernia was easily reducible. |
| August 30, 2006 | Mr. Torrez reported that his hernia was larger and more painful. He was taught the proper reduction technique. He was also told that health services could not do more unless his hernia became a medical risk. |

During this same time period, Mr. Torrez submitted multiple grievances and letters describing his hernia and pain. For example, on July 31, Mr. Torrez submitted a grievance

PAGE 3 OPINION AND ORDER

stating: "The pain is incredible at times, especially when I sneeze or cough. . . . I live with this pain everyday and it is effecting [sic] my quality of life." (*Id.* Docs. 453-54.) On August 3, Mr. Torrez received a Grievance Response Form that stated: "If your symptoms worsen, please access medical through sick call for an evaluation." (Torrez Aff. (#43) Ex. 3.) On August 15, Mr. Torrez submitted a grievance and stated that his hernia was no longer reducible and that he was experiencing extreme pain. (*Id.* Ex. 6.)

Mr. Torrez continued to inform TRCI medical staff about his hernia after August 30, 2006. On September 6, Mr. Torrez wrote a letter to Dr. Steve Shelton and stated: "[My hernia] has grown to the point where Ms. Johnston, Health Service Nurse at sick-call did not even ask me to remove my pants to examine the hernia, as it can now be seen and felt through the material of my pants. . . . The hernia is becoming more painful as weeks go by." (Groshong Decl. (#28) Ex. 2, Attach. 2, Docs. 449-52.) Dr. Shelton responded: "I have read your letter and after conferring with Health Services, there does not appear to be a change in your medical status since the date of your last letter . . . . You have been evaluated in sick call and have again been shown how to properly reduce the hernia, which is still easily reducible." (Torrez Aff. (#43) Ex. 7.)

In early October 2006, Mr. Torrez's attorneys contacted the counsel for the Oregon Department of Corrections, reported that Mr. Torrez was being denied medical care, and requested that Mr. Torrez receive medical treatment. Subsequently, on November 10, 2006, Dr. Lytle wrote in his "Physician's Orders": "Schedule appt [with] Dr. Gregory for review of new incisional hernia and consideration of repair due to prior court case." (Groshong Decl. (#28) Ex. 2, Attach. 2, Doc. 050.) On November 28, Dr. Gregory examined Mr. Torrez, and he surgically repaired Mr. Torrez's hernia on December 11, 2006.

PAGE 4 OPINION AND ORDER

Based on these events, Mr. Torrez now alleges six claims for relief.

(1) Violation of the Fourteenth Amendment—substantive due process

(2) Violation of the Eighth Amendment

(3) Violation of the First Amendment—retaliation

(4) Breach of contract

(5) Breach of the covenant of good faith and fair dealing

(6) Intentional infliction of emotional distress

The defendants filed a Motion for Summary Judgment (#25) against all six claims. Mr. Torrez concedes that his Fourteenth Amendment claim fails. (Pl.'s Opp'n to Summ. J. (#40) 13-14.)

## DISCUSSION

**I.     Standard**

Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the movant initially shows that no material issue of fact exists for trial, the non-moving party cannot then rest on the pleadings; "rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.* 56(e)(2). The court views the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

PAGE 5 OPINION AND ORDER

## II. The Eighth Amendment Claim

The Eighth Amendment's "elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials' "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). First, a prisoner's medical need is serious if it could result in further injury or the "unnecessary and wanton infliction of pain." *See id.*; *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Second, prison officials are deliberately indifferent if they consciously or recklessly disregard an excessive risk to a prisoner's health. *See Farmer v. Brennan*, 511 U.S. 825, 835, 839-40 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."). "To prevail under these principles, [a plaintiff] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to [the] plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

Prison officials may manifest deliberate indifference in two ways. "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05). However, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference; . . . [there is] no claim for deliberate medical indifference unless the denial was harmful." *Shapley v.*

*Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle*, 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.")). Furthermore, a mere difference of medical opinion does not amount to deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." *Jackson*, 90 F.3d at 332.

      Here, assuming Mr. Torrez had a serious medical need, the defendants were not deliberately indifferent to that need when they merely delayed surgery. Mr. Torrez argues: "Delays in treatment are sufficient to establish deliberate indifference." (Pl.'s Opp'n to Summ. J. (#40) 13). He is incorrect. The "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . ." *Shapley*, 766 F.2d at 407.

      Furthermore, the defendants were not deliberately indifferent to Mr. Torrez's pain and suffering because they provided him medical treatment. Mr. Torrez submitted numerous letters and grievances describing his pain. He argues: "The evidence clearly shows that [he] suffered an increase in pain and limitations from the untreated recurrent hernia, and that the pain was not relieved until the second surgery was performed." (Pl.'s Opp'n to Summ. J. (#40) 13.) However, he was told to "access medical through sick call for an evaluation." (Torrez Aff. (#43) Ex. 3.) The medical chart notes also indicate TRCI medical staff taught him how to reduce the hernia. They also taught him how to hold the area when coughing or sneezing (times when he experienced increased pain). Moreover, when Mr. Torrez first reported pain on June 29, 2006,

PAGE 7 OPINION AND ORDER

Dr. Lytle recommended ibuprofen. (Groshong Decl. (#28) Ex. 2, Attach. 2, Doc. 030-31.) Based on this evidence and the short time between Mr. Torrez's diagnosis and surgery, no rational trier of fact could conclude the defendants consciously or recklessly disregarded his pain and suffering.

Lastly, the defendants were not required to provide surgery immediately after Dr. Lytle diagnosed Mr. Torrez's hernia. Mr. Torrez argues he should have received surgery sooner, if not immediately. (*See* Pl.'s Opp'n to Summ. J. (#40) 12-13.) He submitted Dr. Gregory's affidavit, which states: "If an inguinal hernia is, or becomes, tender and difficult to reduce, the patient should be referred to a surgeon immediately both to resolve the patient's discomfort and due to associated risks . . . ." (Gregory Decl. (#42) ¶ 9.) However, the Eighth Amendment does not require that prison officials "provide surgery for every hernia"; it requires that they "give due consideration to the unique facts of each case." *Delker v. Maass*, 843 F. Supp. 1390, 1399 (D. Or. 1994). The defendants considered Mr. Torrez's case, provided conservative care, and provided surgery within six months after he first reported pain. To the extent Dr. Gregory implies Mr. Torrez should have received surgery sooner, it is a difference of medical opinion that does not support an Eighth Amendment claim. *See Jackson*, 90 F.3d at 332.

In sum, no rational trier of fact could conclude the defendants were deliberately indifferent to Mr. Torrez's serious medical needs. Therefore, I GRANT summary judgment on his Eighth Amendment claim.

### III. The First Amendment Retaliation Claim

In the prison context, a viable claim for "First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). An adverse action is an action that "would chill a person of ordinary firmness" from engaging in protected activity. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Rhodes*, 408 F.3d at 568 (stating a proper First Amendment inquiry asks whether an official's acts would chill or silence a person of ordinary firmness).

Here, Mr. Torrez cannot prove the defendants took an adverse action against him. The defendants argue that Mr. Torrez received medical care that met community standards. (Am. Concise Statement of Material Facts (#34) Ex. 1, pp. 11, 33, 35, 45.) Mr. Torrez argues he should have been assigned to a low bunk and received surgery sooner. (Pl.'s Opp'n to Summ. J. (#40) 8-9.) However, he does not identify evidence that his care fell below community standards. (*See id.*) His own medical expert, Dr. Gregory, does not opine that his treatment fell below community standards. (*See* Gregory Decl. (#42) ¶ 8-10.)[1] In the context of a retaliation claim, medical care that meets community standards is not "adverse." *See Giraldes v. Roche*, 2007 WL 4591451, at *5 (E.D. Cal. Dec. 28, 2007). Therefore, because Mr. Torrez cannot prove the defendants took an adverse action against him, I GRANT summary judgment on his First Amendment retaliation claim.[2]

---

[1] While Dr. Gregory opines that Mr. Torrez should have been referred to a surgeon earlier, he does not does not opine that Mr. Torrez's treatment fell below community standards.

[2] I also note that Mr. Torrez would be unable to prove that the defendants' actions chilled his exercise of his First Amendment rights. He filed numerous grievances and communicated with TRCI medical staff from the time his hernia recurred until his surgery.

PAGE 9 OPINION AND ORDER

**IV.    The Breach of Contract Claim**

Oregon courts follow a three step process when interpreting contractual provisions. First, the court examines the text of the disputed provision in the context of the document as a whole. "If the provision is clear, the analysis ends." *Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997). A provision is clear if it has only one sensible and reasonable interpretation in light of the contract's text and context. *Moon v. Moon*, 914 P.2d 1133, 1135 (Or. Ct. App. 1996). Second, if the contract is ambiguous, a trier of fact ascertains the intent of the parties and construes the contract consistent with the parties' intent. *Yogman*, 937 P.2d at 1022. Third, if the analysis does not end with step one or two, then the court relies on maxims of construction. *Id.*

Here, the relevant contractual provision is clear. It states Mr. Torrez would receive the "[t]he prompt surgical repair of [his] right inguinal hernia." (Am. Concise Statement of Material Facts (#34) Ex. 1, p. 16.) The heading of the settlement agreement refers to *Torrez v. Richter et al.*, No. CV 03-770-PA (D. Or. filed June 6, 2003). Thus, the defendants agreed to surgically repair Mr. Torrez's 2003 hernia.

The defendants did not breach the settlement agreement. On September 15, 2005, Dr. Gregory repaired Mr. Torrez's 2003 hernia (Groshong Decl. (#28) Ex. 2, Attach. 2, Docs. 330-31), and Mr. Torrez was hernia-free for nine months. Unfortunately, Mr. Torrez's hernia recurred. The recurrence rate for such hernias is about five percent (*Id.*), and the settlement agreement does not mention what the parties would do if the hernia recurred. Mr. Torrez argues he was entitled to a second hernia surgery. However, as mentioned, Mr. Torrez's 2005 surgery repaired his 2003 hernia, and the settlement agreement does not address recurrence. Mr. Torrez

thus received "[t]he prompt surgical repair of [his] right inguinal hernia."  Therefore, I GRANT summary judgment on Mr. Torrez's breach of contract claim.

## V.  The Breach of the Covenant of Good Faith and Fair Dealing Claim

In Oregon, there is an implied covenant of good faith and fair dealing in every contract. The covenant implies that neither party will "'destroy[] or injure[] the right of the other party to receive the fruits of the contract.'"  *Perkins v. Standard Oil Co.*, 383 P.2d 107, 112 (Or. 1963) (quoting 3 Corbin on Contracts 278 (1960)).

As discussed above, Mr. Torrez received the hernia surgery required by the settlement agreement.  The defendants provided that surgery and did not "destroy[] or injure[]" Mr. Torrez's rights under the agreement.  Therefore, I GRANT summary judgment on Mr. Torrez's breach of the covenant of good faith and fair dealing claim.

## VI.  The Intentional Infliction of Emotional Distress Claim

To succeed on a claim for IIED in Oregon, a claimant must demonstrate: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct."  *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995).  Socially intolerable conduct is conduct that is "outrageous in the extreme."  *Patton v. J.C. Penney Co.*, 719 P.2d 854, 858 (Or. 1986) *abrogated on other grounds by McGanty*, 901 P.2d 841.  "Conduct that is merely 'rude, boorish, tyrannical, churlish, and mean' does not satisfy that standard . . . ."  *Watte v. Maeyens, P.C.*, 828 P.2d 479, 481(Or. Ct. App. 1992) (quoting *Patton*, 719 P.2d at 858).

Mr. Torrez's IIED claim fails because the defendants provided care that meets community standards. They provided surgery within five months after Dr. Lytle diagnosed Mr. Torrez's hernia. Before the surgery, they provided conservative care that met community standards. Providing medical care that meets community standards cannot be "an extraordinary transgression of the bounds of socially tolerable conduct." Therefore, I GRANT summary judgment on Mr. Torrez's IIED claim.

## CONCLUSION

Based on the foregoing, I GRANT the defendants' Motion for Summary Judgment (#25).

## MOTION TO STRIKE

Mr. Torrez filed a Motion to Strike Portions of the Defendants' Reply (#53). Because I relied on only the defendants' opening memorandum and material submitted with it, I DENY the Motion to Strike as moot.

IT IS SO ORDERED.

DATED this   14th   day of August, 2008.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court